**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 09-82303-CIV-ALTONAGA**

**ERNEST W. WILLIS**,

      Appellant,

vs.

**DEBORAH C. MENOTTE**,
Trustee in Bankruptcy for Ernest
W. Willis; and **RED REEF, INC.**,

      Appellees.

_____/

## ORDER

    Appellant, Ernest W. Willis, appeals two orders and the respective final judgments of the United States Bankruptcy Court for the Southern District of Florida ("the bankruptcy court") under 28 U.S.C. § 158(a).  The first is a Memorandum Order Sustaining in Part and Overruling in Part Trustee and Creditor's Objections to Debtor's Claimed Exemptions ("*Order I*") [B.D.E. 585] and Final Judgment ("*Final Judgment I*") [B.D.E. 586], entered in case number 07-11010-PGH ("the main case") on August 6, 2009.[1]  The second is a Memorandum Order Granting Relief Sought in Trustee's Verified Complaint for Injunctive Relief and for Accounting ("*Order II*") [B.D.E. 76] and Final Judgment ("*Final Judgment II*") [B.D.E. 77], entered in case number 08-01383-PGH ("the adversary case") on August 6, 2009.  The Court has carefully considered the briefs submitted by the parties, applicable law and pertinent portions of record.

---

[1] Docket entries of the bankruptcy court are indicated as [B.D.E. ##] and docket entries of the reviewing court are indicated as [D.E. ##].

Case No. 09-82303-CIV-ALTONAGA

# I.  BACKGROUND

**A.      Factual Background**

This appeal arises from the personal bankruptcy of Appellant, Ernest W. Willis ("Willis"),

filed on February 16, 2007 under Chapter 7 of the Bankruptcy Code.  Willis claimed the full value

of three individual retirement accounts ("IRAs") as exempt assets under 11 U.S.C. § 522(b)(3)(C).

(*See* Amended Schedule C [B.D.E. 349]).  The three accounts were (1) a Merrill Lynch IRA valued

at $1,247,000.00; (2) an AmTrust Bank ("AmTrust") IRA valued at $109,000.00; and (3) a Fidelity

Federal ("Fidelity") IRA valued at $143,000.00.  (*See id.*).  The Appellees, Trustee Deborah C.

Menotte and a Creditor, Red Reef, Inc., objected to the exemptions.  (*See* Objection to Debtor's

Amended Schedules [B.D.E. 379]; Objection to Debtor's Claim of Exemptions to Amended

Schedule C [B.D.E. 378]).  At trial, the Trustee and Creditor presented evidence to establish Willis

used the Merrill Lynch IRA funds in a manner as to make them taxable, and therefore, ineligible for

exemption from the bankruptcy estate.  Because the other two IRA accounts were funded by monies

subsequently derived from the Merrill Lynch IRA, the Trustee and Creditor maintained the AmTrust

and Fidelity IRAs were also ineligible for exemption.[2]

Willis opened the Merrill Lynch IRA in early 1993 using funds from another IRA.[3]  The

Disclosure and Custodial Agreement (the "Agreement") of the Merrill Lynch IRA indicates the IRA

is approved as to form by the Internal Revenue Service, but not as to "the merits" of the IRA.  The

Agreement also states "[t]he Tax Code prohibits you from using your IRA to engage in certain

---

[2]  The Trustee subsequently withdrew her objections to the claimed exemptions for the AmTrust and Fidelity IRAs.  (*See* [B.D.E. 406]).

[3]  Detailed facts including transaction dates, amounts and account numbers can be found in the bankruptcy court's order and are not restated with such specificity here.  (*See Order I* at 2-11).

2

Case No. 09-82303-CIV-ALTONAGA

transactions under penalty of losing your tax-deferred status. For example, you may not borrow from your account, sell property to it or buy property from it." (*Order II* at 3 (quoting the Agreement)). Willis did, however, engage in prohibited activity by borrowing from his Merrill Lynch IRA account on several occasions.

On December 20, 1993, Willis transferred $700,000.00 from the Merrill Lynch IRA account to a non-IRA account held with his wife, and then transferred the money to a third party in order to fund a real property mortgage (the "Ocean One mortgage"). The mortgage was not placed into the Merrill Lynch IRA. Instead, Willis borrowed money from family and friends to repay the Merrill Lynch IRA in February 1994, in advance of the sixty-day withdrawal limit in order to avoid tax penalties. When the real property secured by the mortgage was sold in 1998, the proceeds of the sale were deposited into a personal account and not into the Merrill Lynch IRA.

Funds from the Merrill Lynch IRA were also used in early 1997 to prop up another account at Merrill Lynch when Willis' brokerage account ran a negative balance due to falling stock prices. By engaging in a check-swapping scheme that involved moving money simultaneously between his IRA and the brokerage account on seven separate occasions, Willis managed to keep a positive balance in his brokerage account while avoiding tax liabilities and penalties on his Merrill Lynch IRA. The net effect of the transactions was a $186,500.00 benefit to the brokerage account.

Willis also indirectly funded an AmTrust IRA with money from his Merrill Lynch IRA. Transferring $90,000.00 from his Merrill Lynch IRA in 2002, Willis deposited the funds at Southern Community Bank, which was acquired by Fifth Third Bank. Willis opened an IRA at Fifth Third Bank and the money remained there until 2005, when the principal amount with interest ($102,714.28) was withdrawn and used to fund an AmTrust IRA Account. A year later, the full

3

balance including interest ($108,433.60) was withdrawn and moved into a checking account at Fidelity Federal Bank & Trust ("Fidelity").  Within sixty days, Willis withdrew $108,433.60 from the Fidelity checking account and deposited it into the AmTrust IRA he claims as exempt from the bankruptcy estate.

Willis also claims an exemption for a third IRA held at Fidelity.  The Fidelity IRA was partially funded by two withdrawals in August and November 2002 from the Merrill Lynch IRA, totaling $60,000.00.

**B.     The Bankruptcy Court's Orders**

Following trial on December 3, 2008, the bankruptcy court entered an order in the main case sustaining the Trustee and Creditor's objections to Willis' claimed exemptions of the full value of the Merrill Lynch and AmTrust IRAs, and $60,000.00 of the Fidelity IRA.  (*See Order I* at 32).  The bankruptcy court concluded sufficient evidence existed to rebut the presumption that Willis' IRAs were eligible for exemption.  Willis' improper use of his Merrill Lynch IRA to secure the Ocean One mortgage caused that account to lose its exempt status as of January 1, 1993.  Because all of the funds in the AmTrust IRA and $60,000.00 in the Fidelity IRA could be traced to the non-exempt Merrill Lynch account, the bankruptcy court also ruled the AmTrust IRA and $60,000.00 of the Fidelity IRA were not entitled to exemption.  The bankruptcy court entered Final Judgment reflecting these conclusions.  (*See Final Judgment I* at 2).

The bankruptcy court also entered an order in the adversary case granting the Trustee's request for a permanent injunction enjoining Willis from using the non-exempt IRA funds for any purpose, and requiring Willis to surrender any post-petition withdrawals from the non-exempt funds

Case No. 09-82303-CIV-ALTONAGA

to the Trustee and provide a post-petition accounting of all non-exempt funds within ten days of the order.  (*See Order II* at 11).  Final Judgment was entered.  (*See Final Judgment II* at 2-3).

## II.  ANALYSIS

### A.  Standard of Review

District courts have appellate jurisdiction over the judgments, orders, and decrees of bankruptcy courts.  *See* 28 U.S.C. § 158(a) (2008).  On appeal, Willis challenges both the factual findings of the bankruptcy court as well as its legal conclusions.  A bankruptcy court's findings of fact, whether based on oral or documentary evidence, "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."  Fed. R. Bankr. P. 8013; *see also Miller Buckfire & Co. v. Citation Corp. (In re: Citation Corp.*), 493 F.3d 1313, 1318 (11th Cir. 2007).  A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).  "In bankruptcy appeals, legal determinations of the bankruptcy court . . . are subject to *de novo* review."  *Menotte v. Brown* (*In re Brown*), 303 F.3d 1261, 1265 (11th Cir. 2002) (citing *Bush v. JLJ Inc.* (*In re JLJ Inc.*), 988 F.2d 1112, 1116 (11th Cir. 1993)).

### B.  Disputed Factual Findings

Willis disputes several of the bankruptcy court's findings of fact.  With respect to the court's findings on the Merrill Lynch account, Willis disagrees that he "used Merrill Lynch IRA funds to purchase the assignment of the Ocean One Property Mortgage."  (*Order I* at 5; *see* Initial Br. of Appellant ("*Brief*") [D.E. 10] at 2).  Instead, he offers a distinction, acknowledging he moved the funds from the IRA to a joint account and then to the mortgage purchase.  (*See Brief* at 2).  He also

5

objects to the court's use of the word "repay" in its characterization of Willis' refunding of his Merrill Lynch IRA. (*Order I* at 5; *see Brief* at 2). Willis characterizes the return of $700,000.00 to his Merrill Lynch IRA as a "re-deposit." (*Brief* at 2). Finally, Willis disagrees with the court's statement that he "testified at trial that in late April or early May of 1998, he sold the Ocean One Property for $1,200,000 . . ." (*Order I* at 5), and quotes from an earlier order of the bankruptcy court (*see Brief* at 2).

Willis also claims the bankruptcy court's finding that the value of certain stock in his Joint Brokerage Account had dropped was unsupported by evidence. (*See Brief* at 3). He further objects to any findings regarding the Amtrust and Fidelity IRAs that were based on "stipulations to supplement the inadequate record offered by the objecting parties." (*Id.*). Finally, Willis objects to the bankruptcy court's omission of Willis' testimonial statement regarding an Internal Revenue Service (IRS) audit in 1993. (*See id.* at 4).

The Federal Rules of Bankruptcy Procedure require an appellant's brief to "contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." Fed. R. Bankr. P. 8010(a)(1)(E). Support for the issues presented on appeal is especially important when an appellant asserts error in a bankruptcy court's factual findings. "The 'clear error' standard of review 'imposes an especially heavy burden on the appellant . . .'" *Hiram Walker & Sons, Inc., v. Kirk Line*, 30 F.3d 1370, 1376 (11th Cir. 1994) (quoting *Lincoln v. Bd. of Regents of the Univ. Sys. of Ga.*, 697 F.2d 928, 939 (11th Cir. 1983)). As one court has framed it, "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Hiram Walker*, 30 F.3d at 1378, n.2 (Dubina, J.,

Case No. 09-82303-CIV-ALTONAGA

concurring) (quoting *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988)).

Willis fails to show how any of the disputed findings are clearly erroneous. As to the bankruptcy court's findings on the Merrill Lynch IRA, Willis presents no rationale for why the designated statements are wrong, he suggests distinctions without apparent differences, and fails to cite to record evidence sufficient to overcome the findings. Where Willis does cite to evidence – in the omission of his "unrefuted testimony" regarding an IRS audit – he fails to show how the omission makes the findings clearly erroneous. Finally, his objection to the findings regarding the Amtrust and Fidelity IRAs does not identify which findings are disputed, nor does he provide citations to the record to support the amorphous claim. Willis relies on no authority to bolster the conclusion that certain findings "based upon supplements to the record" (*Brief* at 4) should be stricken.

Moreover, the bankruptcy court's statement regarding the depreciation of securities in the joint brokerage account is fully supported in the record. The December 1996 Merrill Lynch statement reflects the value of the Mercury Finance securities to be $386,499.00 (*see* Trial Record, Plaintiff's Composite Ex. 24, Vol. I, Tab 1, Bates No. VL0606080000640) and the January 1997 balance of the same holding to be $67,044.00. (*See id.*, Tab 2, Bates No. VL0606080000623). The January 31, 1997 statement reflects a negative balance of $112,395.00 in the joint brokerage account. (*See id.*). Simple math leads one to conclude the value of Mercury Finance securities in Willis' joint brokerage account dropped "about $320,000.00." (*Order I* at 5). This calculation is not a fact subject to reasonable dispute and it is "capable of accurate and ready determination by resort to

7

sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Whether requested

by the parties or not, judges are permitted to take judicial notice of adjudicative facts.  *See id.* 201(c).

In sum, Willis fails to establish that the bankruptcy court's findings of fact are clearly erroneous.

## C.   Order to "Supplement" the Record Post-Trial

Willis also appeals the bankruptcy court's decision to "supplement" the record regarding the

Amtrust and Fidelity Federal accounts.  (*See Brief* at 13).  Willis' complete argument on this issue

is as follows:[4]

> The bankruptcy court conceded that the record was insufficient to sustain the
> objections regarding the Amtrust and Fidelity Federal accounts, to the point the Court
> compelled Mr. Willis to supplement the closed record.  There is no citation to
> authority which would permit this procedure, and there is apparently none.

(*Id.*).

Willis' argument is not entirely accurate.  Following trial, the bankruptcy court issued an

Order directing the parties to identify which of three AmTrust IRAs were claimed as exempt

property by Willis and objected to by the Trustee and Creditor.  (*See* Order Requiring Creditor &

Debtor to Clarify Key Material Facts [B.D.E. 554], filed on June 22, 2009).  The bankruptcy did not

concede the record was insufficient to sustain the Trustee and Creditor's objections, nor did it require

the record be supplemented.  It did state there were "inadequate submissions by the attorneys" on

---

[4] Willis' argument on this issue fails to meet the requirements imposed on appellants under Rule
8010(a)(1)(E) of the Federal Rules on Bankruptcy Procedure because it does not "contain the contentions
of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities,
statutes and parts of the record relied on."  Nevertheless, the Court treats the issue as if argued sufficiently
as there is an adequate record below of the purported grounds to Willis' objection.  *See* Debtor's Response
to Order Requiring Creditor and Debtor to Clarify Key Material Facts [B.D.E. 564]; Debtor's Notice of
Filing Supplemental Authority Regarding Burden of Proof [B.D.E. 577]; and Debtor's Response to Red Reef
Inc.'s Memorandum [B.D.E. 584].

both sides: Willis failed to specify with particularity the account he claimed as exempt, and the Trustee and Creditor failed to specify the account to which they objected. (*See id.* at 2).

The parties' written responses to the bankruptcy court's focused queries also failed to clarify the issue (*see* Clarification & Resp. by Creditor, Red Reef, Inc. [B.D.E. 556]; Debtor's Resp. to Order Requiring Creditor & Debtor to Clarify Key Material Facts [B.D.E. 564]), so the court scheduled an evidentiary hearing. The parties filed a stipulation in advance of the hearing, which also failed to clarify the questions put to the parties by the court. (*See* Stip. in Resp. to Order Requiring Creditor & Debtor to Clarify Key Material Facts [B.D.E. 572]). An evidentiary hearing was held. Following it, Willis acknowledged "[t]he parties' compliance with the Court's Order [to Clarify] does not increase the universe of evidence submitted in the trial, or change the universe of evidence introduced by the objecting parties . . . ." (Debtor's Resp. to Red Reef's Mem. [B.D.E. 584]). In other words, Willis concedes no prejudice was had by either party by the court's need for clarification and the manner in which it was done. Moreover, the record indicates the bankruptcy court entertained no new evidence, but in the interest of judicial economy, merely sought to confirm its understanding of how the money moved between three different AmTrust accounts.

**D.   The Individual Retirement Fund Exemption**

Willis raises three other legal issues on appeal. He first argues the bankruptcy court improperly examined the operation of his three IRAs because qualifying IRAs are presumed exempt under 11 U.S.C. § 522(b)(3)(C) and (4)(A), and the presumption is not rebuttable. Federal law permits a debtor to exempt from property of the bankruptcy estate "retirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A,

Case No. 09-82303-CIV-ALTONAGA

414, 457, or 501(a) of the Internal Revenue Code of 1986."  11 U.S.C. § 522(b)(3)(C).  Section

522(b)(4)(A) further provides:

> (4)  For purposes of paragraph (3)(C) . . . , the following shall apply:
>
>> (A) If the retirement funds are in a retirement fund that has received a favorable determination under section 7805 of the Internal Revenue Code of 1986, and that determination is in effect as of the date of the filing of the petition in a case under this title, those funds *shall be presumed* to be exempt from the estate.

11 U.S.C. § 522(b)(4)(A) (emphasis added).  Willis argues the words "shall be presumed" establish

an irrebuttable presumption.  Without more, he relies on *McGowan v. Ries* (*In re McGowan*), 226

B.R. 13, 20 (B.A.P. 8th Cir. 1998), for the proposition "that the language 'deemed' or 'shall be

deemed' in a regulation or statute creates a conclusive presumption and not a rebuttable

presumption."  *McGowan* is not on point, however, as the word "deemed" is not used in the statute.

Pointing to the plain language of the statute, the bankruptcy court found Willis' arguments

to be unpersuasive.  (*See Order* at 16).  The court read "shall be presumed" to mean "rebuttal

evidence is appropriate."  (*Id.* at 14).  Even though the IRS rendered a favorable determination as

to the form of the Merrill Lynch IRA account, the IRS did not assess the merits of the account – nor

could it; the IRS explicitly limited its determination to form because the Merrill Lynch account was

self-directed.  *See Plunk v. Yaquinto* (*In re Plunk*), 481 F.3d 302, 307 (5th Cir. 2007) (finding courts

can reach an independent decision when the IRS never considered owner's abuse of plan assets or

audited the plan to determine whether it was operationally qualified); *Dzikowski v. Blais* (*In re

Blais*), 220 B.R. 485 (S.D. Fla. 1997) (reversing bankruptcy court for failing to consider whether

plan's operation rendered it unqualified despite the IRS's favorable determination).  The bankruptcy

Case No. 09-82303-CIV-ALTONAGA

court's consideration of evidence to rebut the presumption the IRA accounts were qualified was wholly appropriate under section 522(b)(4)(A).

Willis also argues the bankruptcy court erred by considering federal law outside of bankruptcy law – specifically, tax law – in determining whether his IRA accounts had lost their tax-exempt status. He cites section 522(b)(4) as limiting the court's consideration to the Bankruptcy Code, which states, in relevant part:

> (4)  For purposes of paragraph (3)(C) and subsection (d)(12), the following shall apply:
>
> . . .
>
> (C)      A direct transfer of retirement funds from 1 fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986, under section 401(a)(31) of the Internal Revenue Code of 1986, or otherwise, shall not cease to qualify for exemption under paragraph (3)(C) . . . by reason of such direct transfer.
>
> (D)      (i)      Any distribution that qualifies as an eligible rollover distribution within the meaning of section 402(c) of the Internal Revenue Code of 1986 or that is described in clause (ii) shall not cease to qualify for exemption under paragraph (3)(C) . . . by reason of such distribution.
>
>          (ii)      A distribution described in this clause is an amount that--
>
>                (I)      has been distributed from a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986; and
>
>                (II)      to the extent allowed by law, is deposited in such a fund or account not later than 60 days after the distribution of such amount.

11 U.S.C. § 522(b)(4). Willis maintains the statute's language in subsection (b)(4)(D)(ii)(II), "to the extent allowed by law," bars the bankruptcy court from considering any law other than bankruptcy law in determining whether his IRAs are ineligible for exemption. He attempts to establish that the

11

omission of the words "applicable non-bankruptcy law" from section 522(b)(4) means a bankruptcy court is limited to consider only the Bankruptcy Code in its determinations.

This argument also misses its mark. The bankruptcy court is obligated to determine whether the funds are in "a fund or account that is exempt from taxation" and is directed to specific sections of the Internal Revenue Code, which define those tax-exempt accounts. *Id.* § 522(b)(3)(C). The bankruptcy court must also evaluate distributions "within the meaning of section 402(c) of the Internal Revenue Code or that is described in clause (ii) . . . ." *Id.* § 522(b)(4)(D)(I). Clause (ii) also includes references to funds exempt from taxation under specific sections of the IRS Code and deposited, "to the extent allowed by law," in another fund within 60 days. *Id.* § 522(b)(4)(D)(ii). The Bankruptcy Code clearly and succinctly requires a court to evaluate IRAs using non-bankruptcy law.

Thus, the bankruptcy court was bound to evaluate Willis' three IRAs through the lens of the Internal Revenue Code, and especially under section 408 because of the multiple distributions Willis made from the Merrill Lynch IRA. Section 408, which is referred to in section 522(b)(4) of the Bankruptcy Code, governs IRAs. In addition to other requirements, the law identifies events that disqualify accounts from tax-exempt status such as borrowing against the IRA, pledging the account as security, and commingling IRA accounts with common funds. *See* 26 U.S.C. § 408(e)(3)-(6). Section 408(e)(2)(A) specifically provides, "If, during any taxable year of the individual for whose benefit any [IRA] is established, that individual . . . engages in any transaction prohibited by section 4975 with respect to such account, such account ceases to be an [IRA] as of the first day of such taxable year." Section 4975 defines "disqualified persons," lists prohibited transactions, and

Case No. 09-82303-CIV-ALTONAGA

provides tax penalties on disqualified persons who engage in those transactions.  *See* 26 U.S.C. §
4975.

The bankruptcy court correctly applied both bankruptcy and tax law in arriving at its
conclusions.  In its analysis, the bankruptcy court first considered whether Willis was a "disqualified
person" under 26 U.S.C. § 4975(e)(2).  (*See Order I* at 21-22).  Because Willis exercised
discretionary authority and responsibility over the administration of his IRA, the court properly
determined Willis to be a fiduciary and thus, a disqualified person.  (*See id.*; *see also* 27 U.S.C. §§
4975(e)(2)(A), (e)(3)).  The bankruptcy court then evaluated the Merrill Lynch account activity for
prohibited transactions under 26 U.S.C. § 4975(c)(1) and correctly found Willis had engaged in two
such transactions:  the direct or indirect "transfer to, or use by or for the benefit of, a disqualified
person of the income or assets of a plan," *id.* § 4975(c)(1)(D), and "lending of money or other
extension of credit between a plan and a disqualified person."  *Id.* § 4975(c)(1)(B).

Finally, Willis claims the bankruptcy court erred in concluding he "borrowed" from his
Merrill Lynch IRA.  Willis provides no legal argument to support the claim, but points the Court to
testimony regarding the nature of the Merrill Lynch account.  Because the account only permitted
withdrawals and deposits, Willis argues the word "borrow" was an incorrect characterization of his
use of the Merrill Lynch IRA funds.  The argument is superfluous; the fact of the matter is Willis
withdrew funds from an IRA, used them improperly, and then re-deposited them. " Borrowed" or
not, the bankruptcy court arrived at the correct conclusion: the Merrill Lynch IRA became non-
exempt as of January 1, 1997, and any purported roll-overs from the Merrill Lynch IRA into other
IRA accounts were also non-exempt.

13

Case No. 09-82303-CIV-ALTONAGA

### III.  CONCLUSION

Based upon the foregoing analysis, the Order [B.D.E. 585] and Final Judgment [B.D.E. 586] sustaining Trustee and Creditor's objections to Willis' claimed exemptions in the full value of the Merrill Lynch IRA and AmTrust IRA, and $60,000.00 of the Fidelity IRA, and overruling the Trustee and Creditor's objections to the remaining amount in the Fidelity IRA in Case 07-11010-BKC-PGH are **AFFIRMED**.  The Order [B.D.E. 76] and Final Judgment [B.D.E. 77] in Case 08-01383-PGH, granting Trustee's request for a permanent injunction and requiring Willis to provide a sworn accounting to the Trustee and to turnover to the Trustee non-exempt funds removed from the post-petition IRAs, are also **AFFIRMED**.  The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida this 6th day of April, 2010.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record

14